UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONNA L. McKEREGHAN,<br><br>        Plaintiff,<br><br>    v.<br><br>THE CITY OF SPOKANE, JACK LYNCH, in his official capacity as Deputy mayor of The City of Spokane, DENNIS DEMARIS, in his official capacity as Chief Civil Service Hearing Examiner, ANDRES UDBY, in his official Capacity as EEO Officer, GLEN KIBBEY, in his official capacity as Examination and Classification Analyst, JIM GUYOR, in his Official capacity as Examination and Classification Analyst,<br><br>        Defendants. | NO. CV-06-0215-EFS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CLOSING FILE** |

A hearing was held in the above-captioned matter on November 8, 2007. Plaintiff Donna L. McKereghan appeared *pro se*. Assistant City Attorney Ellen O'Hara appeared on behalf of the City of Spokane and individual Defendants (hereinafter collectively, "the City"). Before the Court was the City's Motion for Summary Judgment, seeking summary judgment on the grounds that Plaintiff failed to present sufficient evidence to establish a genuine issue of material fact to support her causes of action. (Ct. Rec. 19.) Plaintiff opposed the motion, contending she presented sufficient facts to establish that the City's

ORDER ~ 1

pre-employment inquiries were unlawful and that her rights were violated due to these inquiries. After reviewing the submitted material and relevant authority and hearing oral argument, the Court was fully informed. This Order supplements and memorializes the Court's oral ruling granting the City's motion.

**A.    Factual Statement**[1]

In June 2005, Ms. McKereghan applied to be a Public Information Coordinator for the City of Spokane. (Ct. Rec. 39 ¶ 1.) The Job Posting for the position required that "[a]pplicants must possess a valid driver's license or evidence of equivalent mobility." (Ct. Rec. 39; Ct. Rec. 22: Udby Aff. Ex. A.) This requirement was also listed on the Job Description. *Id.* Ex. B. The Job Description also advised, "[a]ctivities may include a Speaker's Bureau, community informational meetings/workshops, as well as displays and booths for trade and scientific shows and fairs." (Ct. Rec. 22 Ex. B.) Under "Physical Requirements," it stated the applicant had to be able "to travel to and from locations and meetings." (Ct. Rec. 22 Ex. B.)

---

[1] In ruling on a motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and the Joint Statement of Uncontroverted Facts (Ct. Rec. 39), in the light most favorable to Ms. McKereghan, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation was created utilizing this standard.

ORDER ~ 2

On June 3, 2005, Ms. McKereghan went to the City's Civil Service Department to submit her application. (Ct. Rec. 39 ¶ 1; Ct. Rec. 35: SOMF ¶ 1; Ct. Rec. 26: Robson Aff. ¶ 3.) As part of her duties as clerk, Lura Robson reviewed Ms. McKereghan's application and asked Ms. McKereghan for a driver's license.[2] (Ct. Rec. 39 ¶ 1; Ct. Rec. 26: Robson Aff. ¶ 4.) Ms. McKereghan responded that the application asked for either a driver's license or "proof of equivalent mobility" and advised Ms. Robson that her request violated the Americans with Disabilities Act (ADA). (Ct. Rec. 39 ¶ 1; Ct. Rec. 35: SOMF ¶ 1.) Ms. Robson discovered the application did ask for either and then checked with Brian Miyamoto to see what would satisfy the "mobility" requirement. (Ct. Rec. 39 ¶ 2.) Mr. Miyamoto also did not know what would satisfy the "mobility" requirement, but conditionally accepted Ms. McKereghan's application pending her return the next business day, June 6, 2005, to satisfy this requirement. (Ct. Rec. 39 ¶ 2; Ct. Rec. 35: SOMF ¶ 2; Ct. Rec. 26: Robson Aff. ¶ 6.)

During the weekend, Ms. McKereghan spent significant time researching what constituted proof of equivalent mobility; she was unable to find an answer. Due to this research she had less time to spend on her Supplemental Application. Also, performing this research upset her and, thus, she did not complete the Supplemental Application as well as she would have without this distraction, including inadvertently failing to answer the questions on pages 5 and 6. (Ct. Rec. 35: SOMF ¶¶ 5 & 6.)

---

[2] If an individual provided a driver's license, Ms. Robson would note on the application in the space provided the driver's license number and the expiration date. (Ct. Rec. 26: Robson Aff. ¶ 26.)

ORDER ~ 3

Ms. McKereghan returned to the City's Civil Service Department on June 6, 2007. (Ct. Rec. 39 ¶ 3; Ct. Rec. 35: SOMF ¶ 3.) Ms. Robson still did not know what documentation would satisfy the proof of equivalent mobility requirement. (Ct. Rec. 35: SOMF ¶ 3.) Mr. Kibbey, the City of Spokane Examination and Classification Analyst, decided that a statement[3] signed by Ms. McKereghan and her driver would suffice. (Ct. Rec. 35: SOMF ¶ 3; Ct. Rec. 23: Kibbey Aff. ¶ 11.) Ms. McKereghan and her driver, Sharon Johnston, signed a statement. (Ct. Rec. 35: SOMF ¶ 3; Ct. Rec. 26: Robson Aff. ¶ 7.) Ms. Robson accepted the document as proof of equivalent mobility and filed it along with the Supplemental Application to be reviewed by a Civil Service Analyst for the position. (Ct. Rec. 30 ¶ 3; Ct. Rec. 26: Robson Aff. ¶ 7; Ct. Rec. 23: Kibbey Aff. ¶ 13.)

Forty-one applications were submitted for the Public Information Coordinator position. Because five applicants did not meet the minimum requirements, only thirty-six were given the Supplemental Application and subsequently evaluated by Mr. Guyor, a Civil Service Analyst during the relevant time period. (Ct. Rec. 22: Udby Aff. ¶ 24; Ct. Rec. 24: Guyor Aff. ¶ 2.)

Mr. Guyor, uninvolved in the original proof of "mobility" discussion, gave Ms. McKereghan a score of 56 out of a possible 100 points, resulting in a ranking of twelfth. (Ct. Rec. 39 ¶¶ 9 & 13; Ct.

---

[3] The signed document stated, "I, Donna McKereghan, am providing proof of mobility as required for the Public Information Coordinator that I have applied for. I have a driver, Sharon Johnston, that provides said mobility." (Ct. Rec. 26 Ex. B.)

ORDER ~ 4

Rec. 24 Exs A & B.)  In scoring her application, Mr. Guyor did not give her full "credit" for her volunteer work and did not credit her points for the questions on pages 5 and 6 of the Supplemental Application, regarding education, conferences, seminars, training, and other information, because she failed to answer these questions. (Ct. Rec. 39 ¶¶ 10-12; Ct. Rec. 24: Guyor Aff. ¶¶ 15-17.)  The top ten individuals were offered an interview; the individual ranked fourth by Mr. Guyor was offered the position.

Ms. McKereghan's name was retained on a list of individuals seeking similar positions. (Ct. Rec. 39 ¶¶ 15-18.)  Twelve other positions later opened up, and Ms. McKereghan was offered interviews for three of the positions; she declined to interview for the final position. (Ct. Rec. 23: Kibbey Aff. ¶¶ 14-26.)

Ms. McKereghan filed a Charge of Discrimination with the Washington State Human Rights Commission on September 12, 2005.  (Ct. Rec. 39 ¶ 19; Ct. Rec. 25 Ex. A.)  The EEOC issued a Notice of Right to Sue, making no finding as to whether an ADA violation occurred.  (Ct. Rec. 39 ¶ 20; Ct. Rec. 25 Ex. B.)  Plaintiff filed this lawsuit on August 3, 2006, alleging Defendants violated the ADA, 42 U.S.C. §§ 12101-12115; the Washington Law Against Discrimination (WLAD), RCW 49.60; Section 504 of the Rehabilitation Act of 1973; Fifth and Fourteenth Amendment rights of the Civil Rights Act of 1991; and various state law claims. (Ct. Rec. 1.)

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The party seeking summary

judgment must demonstrate there is an absence of disputed issues of material fact to be entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In other words, the moving party has the burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Lynn v. Sheet Metal Worker's Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)). The court is to view the facts and draw inferences in the manner most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide sufficient evidence supporting his claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213. "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).

**C. Americans with Disabilities Act**

Plaintiff contends the City violated the ADA by (1) using a qualification standard - possession of either a driver's license or proof of equivalent mobility - which elicits information about a disability

that is not job related and (2) discriminating against her during the application process based on her disability.

### 1. Qualification Standard: Driver's License or Proof of Equivalent Mobility

The ADA prohibits discrimination because of a disability during job application procedures and hiring. 42 U.S.C. § 12112. The ADA defines discrimination as including:

> using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity . . . .

*Id.* § 12112(b)(6); *see also* 29 C.F.R. § 1630.10. Yet, an employee may:

> make pre-employment inquiries into the ability of an applicant to perform job-related functions, and/or may ask an applicant to describe or to demonstrate how, with or without reasonable accommodation, the applicant will be able to perform job-related functions.

29 C.F.R. § 1630.14(a).

Given the statutory framework and language of 42 U.S.C. § 12112, the Court concludes to prove a violation of § 12112(b)(6) Plaintiff must show (1) she meets the other (non-challenged) qualifications (i.e. she is an individual with a disability) and (2) the challenged qualification screens out, or tends to screen out, an individual, or a class of individuals, with a disability. 42 U.S.C. § 12112(b)(6); *see Morton v. United Parcel Serv.*, 272 F.3d 1249 (9th Cir. 2001); *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001); *see also Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999).

ORDER ~ 7

The burden then shifts to the City to establish a business necessity for the qualification. 42 U.S.C. § 12113(a).

Ms. McKereghan met the qualifications, including the challenged qualification, as the City accepted both her Application and her Supplemental Application. Therefore, the central question is whether the driver's license or proof of other mobility requirement "screen[s] out or tend[s] to screen out an individual with a disability or a class of individuals with disabilities." 42 U.S.C. § 12112(b)(6). The Court finds it does not.[4]

Many individuals who are disabled have driver's licenses because either the disability does not impact their ability to drive or the vehicle can accommodate their disability. In fact, the lack of a driver's license is often due to non-disability reasons, such as loss of driving privileges due to traffic and/or criminal misbehavior or laziness. By allowing the alternative "proof of equivalent mobility," the City actually broadened the scope of individuals who could apply for the position. Unfortunately, the City did not have a standard "proof of equivalent mobility" form. Although it may be a good business practice for the City to develop a standard form to provide to applicants, the Court finds the failure to have such a form does not tend to screen out individuals with a disability. For these reasons, the Court finds the

---

[4] To support her position that the "mobility" requirement violated the ADA, Ms. McKereghan relies upon 42 U.S.C. § 12112(d). This section generally prohibits medical examinations and inquiries in advance of a job offer. The Court finds this section inapplicable here as the City was not seeking medical information.

ORDER ~ 8

City's driver's license or proof of equivalent mobility qualification standard does not tend to screen out an individual with a disability and therefore does not violate the ADA.[5]

### 2. Individual Disability Discrimination Claim

In order for her individual disability discrimination claim to survive summary judgment, Ms. McKereghan must present sufficient evidence to establish a genuine issue of material fact as to whether she is a "qualified individual with a disability" discriminated against by the City because of the disability. 42 U.S.C. § 12112(a). If she does, the burden shifts to the City to show a legitimate business reason for its action. If the City is successful at showing such, it is then Plaintiff's responsibility to show that the City's proffered reason was pretext for disability discrimination. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (adopting *McDonnell Douglas* burden-shifting analysis), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

#### a. *Disability*

Section 12102 provides:

The term 'disability' means, with respect to an individual –
   (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
   (B) a record of such impairment; or
   (C) being regarded as having such an impairment.

---

[5] At the hearing, Ms. McKereghan conceded that "mobility" was an essential function of the job and therefore the Court finds the City showed a business necessity for the "mobility" requirement. *See* 29 C.F.R. § 1630.2(n); *Morton*, 272 F.3d at 1254-55.

ORDER ~ 9

42 U.S.C. § 12102; 29 C.F.R. § 1630.2(l); *see, e.g. Wilson v. Heckler*, 761 F.2d 1383, 1385 (9th Cir. 1985). Nowhere in her responsive documents to the dispositive motion does Plaintiff indicate what her claimed disability is. Plaintiff did not provide medical documentation supporting her claimed disability; rather she produced a copy of the City of Spokane's Solid Waste Management's form recognizing that Ms. McKereghan "needs assistance with garbage at all times." According to the form, in order to get such a classification she provided proof of disability "as recognized by the State of Washington, in Chapter 308-96B Washington Administrative Code." In addition, Plaintiff provided a copy of her Spokane Transit card which states "Certificate of Eligibility for ADA Paratransit Service." These documents however do not identify what Plaintiff's impairment is or whether it substantially limits a major life activity.

Although the Court has no obligation to comb through the record, the Court also reviewed documents that were previously submitted by Plaintiff. On February 26, 2007, Plaintiff filed "Rule 26 materials" with the Court (Ct. Rec. 17), which indicate her impairment is epilepsy, that she has four to five seizures a month, and that she is unable to drive because of the impairment. (Ct. Rec. 17 p. 20.) Plaintiff also submitted a "Transmittal Summary: Medical Disability decision" from the Washington State Department of Social and Health Services which found her disabled. (Ct. Rec 35 p. 31.)

Given the earlier submitted materials and what Plaintiff submitted specifically in response to this motion, the Court finds there is sufficient evidence to establish a genuine issue of material fact as to

ORDER ~ 10

whether Plaintiff has a physical impairment that substantially limits one or more major life activities and/or a record of such under § 12102(A) and (B).[6] Also, because Ms. McKereghan's application was accepted and ranked twelfth and she continued to be considered for other positions, a reasonable person could find Ms. McKereghan could perform the essential functions of the position with or without accommodation. Therefore, a reasonable juror could find Ms. McKereghan was a qualified individual with a disability.

      b.   *Adverse Employment Action*

The next analytical question is whether the City took adverse action against Ms. McKereghan because of her disability. The Court finds Plaintiff failed to present sufficient evidence of such.

First, as to the lack of a standard "mobility" form, the Court finds the lack of such a form does not constitute discrimination based on Ms.

---

[6] The parties did not cite to and the Court could not find a case analyzing whether a municipality's disability determination in connection with public services forecloses the municipality from arguing that it did not regard that individual as disabled in an employment setting. Because Plaintiff presented no evidence showing, or inferring, that the City employees in the Civil Service Department knew that Ms. McKereghan received "disability" status for garbage service and public transit rates, the Court finds there is insufficient evidence to show that the City Defendants regarded Ms. McKereghan as having a physical or mental impairment that substantially limits one or more major life activities.

ORDER ~ 11

McKereghan's disability. There is no evidence that the City actually has a form and did not provide it to Ms. McKereghan. Also, as discussed above, the Court finds this requirement did not screen out individuals with disabilities; therefore, requiring Ms. McKereghan to satisfy this requirement was not related to her disability. Ms. McKereghan apparently suffered as a result of the City not knowing what would satisfy the "mobility" requirement as her focus was not on completing the Supplemental Application fully; while this is unfortunate, there is no evidence that either directly or inferentially the City intentionally discriminated against Ms. McKereghan based on her disability.

Second, Ms. McKereghan's application was accepted, unlike five other applications that were not. This creates a strong inference that there was no discriminatory motive behind the City's "mobility" requirement. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir. 1996).

Third, although favorable facts to Plaintiff show that Mr. Guyor reviewed both the Supplemental Application *and* the initial Application - the document upon which the driver's license information was to be noted (Ct. Rec. 24: Guyor Aff. ¶ 24) - , there is no inference of discrimination that can be drawn from reviewing the Application. Plaintiff did not rebut Mr. Guyor's statement, "[a]t the time I performed the assessment for the Public Information Coordinator position, I did not know Ms. McKereghan nor was I aware of the circumstances surrounding her application." (Ct. Rec. 24: Guyor Aff. ¶ 11.) Plus, Ms. McKereghan's argument that Mr. Guyor adversely graded her application because this line was blank on her application is not persuasive because

ORDER ~ 12

two of the applications that Mr. Guyor ranked in the top ten also did not include any information on the "Driver's Lic" line.

For these reasons, the Court finds Plaintiff failed to present sufficient evidence to establish a genuine issue of material fact as to whether she was subject to an adverse action because of her disability. *See Weyer v. Twentieth Century fox Film Corp.* 198 F.3d 1104, 1116 (9th Cir. 2000).

3.  <u>Conclusion</u>

Although the Court finds Plaintiff presented sufficient evidence to establish a genuine issue of material fact as to whether she is a qualified individual with a disability, Plaintiff failed to establish that an adverse action was taken because of her disability.[7] The Court also finds the driver's license or proof of equivalent mobility requirement is lawful. Therefore, the Court grants summary judgment on the ADA claims in the City's favor.

**B.  Other Causes of Action**

For the same reasons the Court finds Ms. McKereghan failed to present sufficient evidence to survive summary judgment on her ADA claim, the Court grants summary judgment in the City's favor on (1) the

---

[7] The Court finds the City presented sufficient evidence of a legitimate, non-discriminatory reason for it ranking Ms. McKereghan twelfth; plus Plaintiff conceded that the "mobility" requirement was an essential function of the position. Plaintiff failed to present sufficient evidence to show that the City's legitimate, non-discriminatory reasons were a pretext for disability discrimination.

ORDER ~ 13

Washington Law Against Discrimination (WLAD), RCW 49.60[8], cause of action and (2) the Rehabilitation Act cause of action, *see Coons v. Sec. of U.S. Dept. of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act.").

In her Complaint, Plaintiff does not identify what her "various state common law causes of action" are. Plaintiff did not articulate what these claims were in her response or at the hearing either. Therefore, the Court dismisses the state law causes of action.

Plaintiff also did not articulate what Fifth and Fourteenth Amendment rights she is seeking enforcement of. Due to her failure to do so or present any arguments against the City's dismissal of her claims, the Court grants the City's motion.

///

///

---

[8] Under the WLAD, a plaintiff must prove: (1) she has a disability; (2) she "can perform the essential functions of the job, with or without reasonable accommodation;" and (3) she "was not reasonably accommodated." *Easley v. Sea-Land Service, Inc.*, 99 Wash. App. 459, 465-66 (2000). To satisfy the first requirement, the plaintiff must show both a disability and discrimination because of that disability. WAC 162-22-040. Ms. McKereghan failed to present sufficient evidence to create a genuine issue of material fact as to whether her claimed disability was a substantial factor in an adverse action.

ORDER ~ 14

For the above given reasons, IT IS HEREBY ORDERED:

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED**.

2. Judgment shall be entered in the Defendants favor with prejudice.

3. This file shall be **CLOSED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and provide a copy to Plaintiff and counsel.

**DATED** this   13th    day of November 2007.

                              s/ Edward F. Shea
                              EDWARD F. SHEA
                         United States District Judge

Q:\Civil\2006\0215.msj.frm

ORDER ~ 15